UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
WAYNE DRUMMOND,

                    Plaintiff,

            - against -

IPC INTERNATIONAL, INC., JOSEPH
MARCELLO, and STEVEN MITCHELL,

                    Defendants.
-------------------------------------------------------------X

**MEMORANDUM OF DECISION
AND ORDER**
03-CV-1187 (DRH) (ARL)

**A P P E A R A N C E S :**

**ZABELL & ASSOCIATES, LLP**
Attorneys for Plaintiff
500 Bi-County Boulevard, Suite 112 N
Farmingdale, New York  11735
By:  Saul D. Zabell, Esq.

**JACKSON LEWIS LLP**
Attorneys for Defendants
58 South Service Road, Suite 410
Melville, New York  11747
By: Marc Steven Wenger, Esq.
    Elliot D. Bernak, Esq.

**HURLEY, District Judge:**

        Plaintiff Wayne Drummond ("Plaintiff") filed the present Age Discrimination in

Employment Act (the "ADEA"), Title VII, and New York State Human Rights Law

("NYSHRL") action against defendants IPC International, Inc. ("IPC"), Joseph Marcello

("Marcello"), and Steven Mitchell ("Mitchell") (collectively, "Defendants"), claiming that he

was discriminated against based on his age and in retaliation for his alleged complaint of a

sexually hostile work environment.  Defendants have moved for summary judgment pursuant to

Federal Rule of Civil Procedure 56.  For the reasons that follow, Defendants' motion is granted

and this case is dismissed in its entirety.

## *BACKGROUND*

The material facts, drawn from the Complaint and the parties' Local 56.1 Statements, are undisputed unless otherwise noted. Plaintiff was 52 years old when he was hired in October 1998 to work by IPC at the Walt Whitman Mall ("WWM") in Long Island, New York as the Director of Public Safety. IPC is a privately held corporation that provides public safety and security services for shopping malls throughout the country. At the time Plaintiff was hired by IPC, Mitchell was employed by IPC as a Senior Group Vice President in charge of IPC's Northeast territory; Marcello was employed as the Vice President of Operations.

One of IPC's clients, Simon Property Group ("Simon"), owns and manages various shopping malls on Long Island, including WWM. At all times relevant to this action, Deborah Weber ("Weber") was a Simon employee and held the position of General Manager of WWM. According to Plaintiff, his duties as Director of Public Safety included assisting individual stores with their problems, maintaining social and business order at the mall, and reprimanding IPC and Simon staff for inappropriate behavior. As Director of Public Safety at WWM, Plaintiff worked closely with Weber in her capacity as General Manager.

On October 5, 1999, Marcello's assistant received a telephone call from an unidentified male who wished to remain anonymous. The male said: "Let Mr. Marcello know that there is about to be a sexual harassment complaint made against [Plaintiff]. The complaint will be made by an employee of Simon and a member of the management staff at [WWM]." (Incident Report of Marcello, dated Oct. 27, 1999 ("Marcello Report").) Marcello conferred with Mitchell and together they called Weber, who confirmed that Elka Shapiro ("Shapiro"), a

Simon employee, had complained about Plaintiff's alleged sexually inappropriate behavior. Weber also stated that Simon wanted Plaintiff removed from its properties. Plaintiff was suspended with pay effective October 6, 1999, pending investigation.

On October 6, 1999, Carl Freiermuth ("Freiermuth"), IPC's Regional Manager, arrived at WWM and commenced an investigation regarding Shapiro's allegations. That same day, Plaintiff told Marcello and Mitchell that he wished to file a grievance stating that he had been unjustly accused. Plaintiff was advised to submit all statements to Jennifer Mansfield, IPC International Corporation Human Resources Vice President. Although Plaintiff admitted making the allegedly harassing comments, he claimed that his statements and conduct were taken out of context and were not harassing. In that regard, he claimed that the "office is and always has been very loose and free with talk [and ]innuendo" and that "various encounters and affairs are openly spoken about." (Defs.' Not. of Motion, Ex. 12.) Plaintiff also filed a complaint against Weber, outlining sexually inappropriate conduct that was allegedly encouraged and fostered throughout the workplace by Weber.

As part of the investigation, Shapiro refused to answer any questions and directed that any inquiry go to her attorney. (Oct. 26, 1999 Statement of Mitchell ("Mitchell Statement") at 3-4.) Shapiro failed to file a written complaint against Plaintiff and no written statement by her was ever taken. (*Id.* at 4.)

After interviewing several Simon and IPC employees, Mitchell concluded as follows:

> [Plaintiff] is a fall guy for a bigger picture. However, it does not change the facts that [Plaintiff] did indeed touch the neck and pull [Shapiro] down to his lap in the General Manager Office. Ms. Shapiro said no, but still sat down on his lap.

> I Stephen Mitchell have visited the property and I have seen the
> open office and how they all speak to one another, I have even had
> to call the General Manager myself and speak to her on the
> language she uses with the Regional Manager. Mr. Freiermuth had
> felt offended by it.

(*Id.* at 5.) Marcello concluded as follows:

> After Stephen Mitchell briefed me on the outcome of the
> investigation, I believe it would be fair to conclude that an
> unprofessional environment was allowed in the mall office. This
> environment was conducive to fostering inappropriate sexual
> conversations among employees, making a complaint of sexual
> harassment a likely occurrence. It is also clear that [Plaintiff] and
> Ms. Shapiro cannot continue to work together at the same location.

(Marcello Report at 4.)

On October 29, 1999, Plaintiff's suspension was converted to an unpaid

administrative leave of absence following Simon's request that Plaintiff not be permitted to work

at any Simon property. Plaintiff was advised that his leave would not exceed six months and that

"[d]uring this time frame, communication is expected to be maintained so as to discuss future

open positions for which you desire to be considered as an applicant." (Pl.'s Ex. 9.) Although

Defendants claim that they were determined to find Plaintiff another position at a non-Simon

property, Plaintiff counters that all of the mall positions offered to him were impossible for him

to accept, due to family obligations, because they were in Texas, Iowa, and Michigan.

Following his suspension and during his administrative leave, Plaintiff continued

to communicate with Weber and other Simon and IPC employees. IPC claims that Plaintiff's

communications interfered with operations at WWM although Plaintiff denies this allegation.

On February 22, 2000, IPC ended Plaintiff's administrative leave of absence and

terminated his employment, citing Plaintiff's "negative attitude, his reputation at Simon and his

refusal to re-locate to a non-Simon property outside of Long Island (since there were no openings at non-Simon properties on Long Island)." (Affidavit of Donald P. Lantz, dated July 30, 2004, ¶ 7.) Plaintiff's position was thereafter filled by a 29 year-old male.

Plaintiff filed this action alleging that he was wrongfully terminated by Defendants based upon age discrimination and in retaliation for his complaints of a sexually hostile work environment. Plaintiff also brings suit for gender discrimination, claiming that he was subjected to a hostile work environment based on alleged inappropriate conduct by Weber.

## DISCUSSION

### I. *Applicable Law and Legal Standards*

#### A. *Summary Judgment*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.' " *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).

Summary judgment is generally inappropriate where questions of the defendant's state of mind are at issue, *Gelb v. Board of Elections of the City of New York*, 224 F.3d 149, 157 (2d. Cir. 2000), and should thus be granted with caution in employment discrimination cases. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994); *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000). Nonetheless, "summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 40 (2d Cir. 1994). "The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). "[T]he salutary purposes of summary judgment — avoiding protracted, expensive and harassing trials — apply no less to discrimination cases than to commercial or other areas of litigation." *Id.* "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo*, 22 F.3d at 1224.

### B. *The McDonnell-Douglas Burden-Shifting Methodology*

In *McDonnell-Douglas Corporation v. Green*, 411 U.S. 792, 802-804 (1973), the Supreme Court first enunciated the now-familiar "burden-shifting" formula used in analyzing Title VII employment discrimination claims based on indirect or circumstantial evidence. This standard was further refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-253 (1981) and *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-511 (1993). Claims brought pursuant to the ADEA are also analyzed under the McDonnell Douglas burden-shifting framework. *See Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005).

Under *McDonnell-Douglas* and its innumerable progeny, (1) a plaintiff must first establish a prima facie case of discrimination; (2) the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions; if the employer does so, the *McDonnell-Douglas* framework and its presumptions and burdens disappear, leaving the sole remaining issue of "discrimination vel non," and thus (3) the burden shifts back to the plaintiff to prove that the employer's stated reason is merely pretextual and that race discrimination was an actual reason for the adverse employment action. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.*

The burden of establishing a prima facie case of employment discrimination has been described as "modest," *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994), or even "minimal." *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001). It is a burden of production, not persuasion, and involves no credibility assessments. *Reeves*, 530 U.S. at 143.

Likewise, the employer's burden of showing a legitimate non-discriminatory reason for its actions is not a particularly steep hurdle. It is not a court's role to second-guess an employer's personnel decisions, even if foolish, so long as they are non-discriminatory. *See Seils v. Rochester City Sch. Dist.*, 192 F. Supp.2d 100, 111 (W.D.N.Y. 2002) (citing, *inter alia*, *Meiri*, 759 F.2d at 995 (2d Cir. 1985)), *aff'd*, 99 Fed. Appx. 350 (2d Cir. 2004). Federal courts do not have a "roving commission to review business judgments," *Mont. v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2d Cir. 1989) (quoting *Graefenhain v. Pabst*

*Brewing Co.*, 827 F.2d 13, 21 n. 8 (7th Cir. 1987)), and  may not "sit as super personnel

departments, assessing the merits — or even the rationality — of employers' non-discriminatory

business decisions." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 825 (1st Cir. 1991).  Thus,

"[e]vidence that an employer made a poor business judgment generally is insufficient to establish

a question of fact as to the credibility of the employer's reasons." *Dister v. Continental Group,

Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988).

      In order to demonstrate that the employer's stated non-discriminatory reasons for

the allegedly discriminatory action are pretextual, "[a] plaintiff is not required to show that the

employer's proffered reasons were false or played no role in the employment decision, but only

that they were not the only reasons and that the prohibited factor was at least one of the

motivating factors." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995).  A

discrimination claimant may show pretext by demonstrating "such weaknesses, implausibilities,

inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons

for its action that a reasonable factfinder could rationally find them unworthy of credence and

hence infer that the employer did not act for the asserted non-discriminatory reasons." *Bombero

v. Warner-Lambert Co.*, 142 F. Supp.2d 196, 203 n.7 (D. Conn. 2000) (quoting *Anderson v.

Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999), and citing *Olson v. Gen. Elec.

Astrospace*, 101 F.3d 947, 951-52 (3d Cir. 1996)), *aff'd*, 9 Fed. Appx. 38 (2d Cir. 2001).

      However, to rebut an employer's proffered non-discriminatory rationale for its

actions and withstand summary judgment, a plaintiff must present more than allegations that are

"conclusory and unsupported by evidence of any weight." *Smith v. Am. Exp. Co.*, 853 F.2d 151,

154-55 (2d Cir. 1988).  "To allow a party to defeat a motion for summary judgment by offering

purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases." *Meiri*, 759 F.2d at 998.

## II.     Plaintiff Fails to Raise a Genuine Issue of Material Fact as to his Claim of Hostile Work Environment

### A.     Governing Legal Principles

To establish a hostile work environment claim, a plaintiff must prove "[1] that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)). "The plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." *Id.*

"This test has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Id.* at 374 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). In analyzing a plaintiff's case, "courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." *Id.* (citing *Harris*, 510 U.S. at 23). Relevant factors include "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 23).

"Finally, it is 'axiomatic' that in order to establish a sex-based hostile work

environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex." *Id.* (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)); *see also Brennan v. Metropolitan Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999) ("A plaintiff must also demonstrate that she was subjected to the hostility because of her membership in a protected class. In other words, an environment which is equally harsh for both men and women or for both young and old does not constitute a hostile working environment under the civil rights statutes.").

**B.    *Sufficiency of the Evidence***

In support of his claim of a sex-based hostile work environment, Plaintiff proffers the following incidents, as alleged in his affidavit :

> 20.  On one occasion when a co-worker asked Weber whether her shoes looked slutty, Weber turned to me and said "Well, what do you think, Chief, do these look slutty?" I became extremely embarrassed by this comment.
>
> 21.  On or about September 1998, Weber called me requesting a meeting at a restaurant.  Upon arrival, Weber proceeded to tell me about her affair with a co-worker and the fact that they had sexual relations at her office, at the mall.
>
> 22.  On or about October 1999, Weber made a statement to me that her paramour was still at the motel with her car.  At which point, I replied that I was not interested in continuing such inappropriate conversation.
>
> 23.  On or about June 1999, Weber remarked that I should give one of the employees time off to pursue a female "because there was a hot, blazing, passionate romance building up there."
>
> 24.  On or about October 1999, Weber came into the lunch-room and announced "they did the deed."  At which point, I turned around to my co-worker Joe Scala and said "can you believe this?"

(Pl.'s Aff., dated Aug. 27, 2004, ¶¶ 20-24.)  Plaintiff further claims that he was told by Mitchell

that as Plaintiff's supervisor, Weber had the authority to remove him for any reason. (*Id.* ¶ 9.)

Thus, Plaintiff felt that he had to go along with Weber's conduct or he would lose his job. (*See* Deposition of Wayne Drummond, dated Apr. 22, 2004 ("Pl.'s Dep."), at 224, 259.)

At his deposition, Plaintiff testified that "there was an environment fostered in the office with [Weber's] acquiescence that led to . . . [Shapiro's actions, including h]er talk, language, dress . . . [and h]er complaint." (Pl.'s Dep. at 219-220.) In addition, Plaintiff proffers his e-mail to Jennifer Mansfield, dated October 6, 1999, wherein Plaintiff states that it was common practice at WWM for Shapiro to touch and hug Plaintiff, as well as other male and female employees. (Pl.'s Ex. 4.) Plaintiff claims that Weber was aware of this conduct and made no attempt to correct it.

Finally, Plaintiff proffers the statements made by Mitchell and Marcello which Plaintiff claims corroborate the existence of a sexually hostile work environment. Specifically, as noted above, after conducting an investigation into Shapiro's allegations, Mitchell concluded that Plaintiff "is a fall guy for a bigger picture" and that after visiting WWM, he had seen "the open office and how they all speak to one another." (Mitchell Statement at 5.) Mitchell further noted that he had to call Weber and speak to her "on the language she uses with the Regional Manager [Freiemuth]" and that Freiemuth was "offended by it." (*Id.*)

Marcello concluded that "an unprofessional environment was allowed in the mall office [which] was conducive to fostering inappropriate sexual conversations among employees, making a complaint of sexual harassment a likely occurrence." (Marcello Report at 4.)

Viewing this evidence in the totality, the Court finds that these incidents, viewed as true, cannot form the basis for a hostile work environment for two reasons. First, they do not

rise to the level of conduct that is "'severe or pervasive enough to create an objectively hostile or abusive work environment.'" *Alfano*, 294 F.3d at 374 (quoting *Harris*, 510 U.S. at 21)). Drawing all inferences in Plaintiff's favor, although the conduct of which Plaintiff complains may have been offensive, no rational juror could find that "the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [Plaintiff's] employment were thereby altered." *See id.* at 373. To the contrary, Plaintiff's proffer demonstrates off-hand remarks that are better characterized as "mere offensive utterance[s]" rather than "physically threatening or humiliating" conduct. *Harris*, 510 U.S. at 23. While Weber's comments regarding her affair with a co-worker may have made Plaintiff uncomfortable, Weber's alleged comments were not personally insulting, nor were they obviously intended to intimidate, ridicule, or demean Plaintiff on account of his gender. *See id.* at 21 ("Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive--is beyond Title VII's purview."). In fact, in numerous cases in which allegations of hostile work environment were far more severe and numerous than those alleged here, claims have been dismissed for insufficiency of evidence for failure to demonstrate pervasive discrimination. *See Alfano*, 294 F.3d at 379 (collecting cases). Accordingly, the Court finds that Plaintiff has failed to raise a genuine issue of material fact that Weber's conduct was "severe or pervasive enough to create an objectively hostile or abusive work environment." *See Harris*, 510 U.S. at 21.

Second, there is nothing in the record to indicate that the alleged conduct was made on the basis of gender. *See Alfano*, 294 F.2d at 374. At best, the evidence here demonstrates that the work environment was equally unprofessional for both men and women.

*Cf. Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion]. . . because of . . . sex.' . . . . 'The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'") (quoting 42 U.S.C. § 2000e-2(a)(1) and *Harris*, 510 U.S. at 25). In fact, during his deposition, Plaintiff admitted that Weber did not direct her allegedly harassing comments specifically to men or women. (Pl.'s Dep. at 238-39.) Accordingly, for this independent reason, Plaintiff's claim must be dismissed.

In sum, the Court finds that the alleged conduct in this case falls far short of an actionable claim. Accordingly, Plaintiff's claims for gender discrimination based on an alleged hostile work environment are dismissed.

**III.      Plaintiff Fails to Raise a Genuine Issue of**
**Material Fact as to his Claim of Age Discrimination**

To establish a prima facie case of discrimination, a plaintiff must show that: (1) he belonged to a protected class, (2) was qualified for the position he held or sought, and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discriminatory intent. *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003). For purposes of this motion, Defendants do not dispute that Plaintiff has established the first three elements of his prima facie case, viz. that he was a member of a protected class, that he was qualified, and that he suffered an adverse employment action. Defendants do contend, however, that Plaintiff cannot prove that he was terminated under circumstances giving rise to an inference of discriminatory intent.

A plaintiff may satisfy the fourth prong of a prima facie case of discrimination by

demonstrating "the ultimate filling of the position with an individual who is not a member of the protected class." *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001). Here, it is undisputed that Plaintiff was replaced by a twenty-nine year old. Accordingly, the Court finds that Plaintiff has established a prima facie case of age discrimination. *See Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) ("[T]he fact that [plaintiff] was replaced by a 31-year-old is sufficient to give rise to the inference that [plaintiff] was the victim of discrimination.").

Once a plaintiff has established a prima facie case of discrimination, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. As noted previously, an employer's burden of showing a legitimate non-discriminatory reason for its actions is not particularly onerous.

Here, Defendants have shown that they initially suspended Plaintiff at the request of Simon, one of IPC's clients, after a Simon employee complained about Plaintiff's alleged sexually inappropriate behavior. This proffer satisfies Defendant's burden. *See, e.g.*, *Jackson v. Citiwide Corp. Transp., Inc.*, No. 02 Civ. 1323, 2004 WL 307243, at *4 (S.D.N.Y. Feb. 17, 2004) (finding that employer had established legitimate, non-discriminatory reason for discharging employee where one of defendant's "major customers" had complained that plaintiff was rude and refused to have future dealings with plaintiff).

With regard to Plaintiff's termination, Defendants have submitted proof demonstrating that Simon requested that Plaintiff not be permitted to work at its properties and that IPC was unable to locate another position for Plaintiff due to his unwillingness to relocate to a non-Simon property outside of Long Island. Defendants have further demonstrated that they believed that Plaintiff had a "negative attitude" and a bad "reputation at Simon" based on his

alleged harassment of Weber subsequent to his suspension. Defendants' proffer satisfies their

minimal burden. *Cf. Thomson v. Saatchi & Saatchi Holdings (USA), Inc.*, 958 F. Supp. 808, 822

(W.D.N.Y. 1997) (defendants' legitimate, non-discriminatory reasons for plaintiff's discharge

included plaintiff's failure to "get along with his colleagues and subordinates," and "complaints

about plaintiff's personality from one of defendants' largest clients"), *aff'd*, 159 F.3d 1348 (2d

Cir. 1998); *Ebbin v. Independent Television Network*, No. 95 Civ. 10097, 1997 WL 441943, at

*4 (S.D.N.Y. Aug. 5, 1997) (personality or attitude are legitimate non-discriminatory reasons for

dismissal).

   Once an employer has articulated a legitimate, non-discriminatory reason for its

actions, the plaintiff then has the burden of showing that the stated reason was pretextual, and

that more likely than not discrimination motivated the adverse employment action. Here,

Plaintiff bases his claim of pretext on the following claims: (1) younger similarly situated

employees who were removed from WWM were immediately transferred to alternate locations

maintained by Defendants on Long Island; and (2) Plaintiff was replaced by a twenty-nine year

old; and (3) Defendants' proffered reasons for his discharge were false.

   As an initial matter, the Court notes that a well-recognized inference against

discrimination exists where the person who participated in the allegedly adverse decision is also

a member of the same protected class. *See, e.g.*, *Marlow v. Office of Court Admin. of New York*,

820 F. Supp. 753, 757 (S.D.N.Y. 1993), *aff'd*, 22 F.3d 1091 (2d Cir. 1994). Here, Donald P.

Lantz, Senior Executive Vice President for IPC, was 61 years old when he made the decision to

terminate Plaintiff's employment and was therefore also a member of the protected class. *See* 29

U.S.C. § 631(a) ("The prohibitions in this chapter shall be limited to individuals who are at least

40 years of age."). Accordingly, this gives rise to an inference against discrimination. Although this does not end the inquiry, it provides an additional inference which plaintiff must overcome. *See, e.g.*, *Toliver v. Community Action Comm'n to Help the Economy, Inc., Cache*, 613 F. Supp. 1070, 1074 (S.D.N.Y. 1985) (stating that if decision maker is in same protected class as plaintiff, claims of discrimination become less plausible), *aff'd*, 800 F.2d 1128 (2d Cir. 1986).

Next, Plaintiff identifies three allegedly similarly situated younger IPC employees, to wit, Lisa Baggio, Anthony Robertson, and John Walther, who he claims were treated differently. According to Plaintiff, upon their removal from WWM, these three individuals were immediately transferred to alternate locations maintained by Defendants in Long Island.

Under Second Circuit law, where a plaintiff seeks to make out a case of discrimination "by pointing to the disparate treatment of a purportedly similarly situated employee, the plaintiff must show that []he shared sufficient employment characteristics with that comparator so that they could be considered similarly situated." *Shumway v. United Parcel Service, Inc.,* 118 F.3d 60, 64 (2d Cir. 1997). Furthermore, "such an employee must be similarly situated in all *material* respects--not in all respects." *McGuinness v. Lincoln Hall,* 263 F.3d 49, 54 (2d Cir. 2001 ) (emphasis in original). In order for employees to be similarly situated in all material respects, "a plaintiff must show that h[is] co-employees were subject to the same performance evaluation and discipline standards." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000) (citing *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 96 (2d Cir. 1999)). In addition, Plaintiff must demonstrate that the similarly situated employees engaged in comparable conduct. *Id.*

Here, it is undisputed that Simon demanded that Plaintiff not be permitted to work at *any* Simon location and that Ms. Baggio and Mr. Robertson were reassigned to other Simon malls. Thus, Ms. Baggio and Mr. Robertson were clearly not similarly situated to Plaintiff as Simon never demanded that they not be permitted to work at Simon malls. Thus, their transfers to Simon locations are irrelevant for disparate impact purposes.

As to John Walther, the only evidence Plaintiff proffers is that Mr. Walther was transferred to another IPC location after filing a written complaint against Weber. However, Plaintiff does not indicate which location Mr. Walther was transferred to. More importantly, however, Mr. Walther's complaint indicates that he was 57 years old at the time his complaint was filed. (Pl.'s Ex. 6.) Accordingly, as Mr. Walther was also a member of the protected class, his transfer may not be used to show discrimination based on the alleged preferential treatment given to younger employees. Plaintiff therefore has failed to elicit any evidence demonstrating that similarly situated younger employees were treated differently so as to create a genuine issue of material fact as to pretext.

After finding that Plaintiff has failed to proffer any evidence demonstrating disparate impact, all that remains is Plaintiff's claim that the reasons offered by IPC for Plaintiff's suspension and termination were pretextual, together with Plaintiff's prima facie case, i.e., Plaintiff was replaced by a twenty-nine year old male. As to the former, Plaintiff claims that IPC's stated reasons for his termination were pretextual because: (1) IPC failed to properly investigate Shapiro's allegations; (2) contrary to IPC's allegations, Plaintiff did not interfere with WWM employees after his suspension; and (3) Plaintiff cannot be charged with refusing to accept employment at the non-Simon malls offered by IPC as their locations were not

reasonable.  Plaintiff argues that "[t]he pretextual reasons presented by Defendants are intended to mask age discrimination."  (Pl.'s Mem. at 9.)

Although it is true that in some cases, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," *Reeves*, 530 U.S. at 148, an "employer [is] entitled to judgment as a matter of law if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there [i]s abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.* Here, even though the parties dispute the import of Plaintiff's actions against Shapiro, it is undisputed that Plaintiff engaged in such conduct and that based on these admissions, as well as Simon's request that Plaintiff be immediately removed from its properties, Plaintiff was suspended with pay. Moreover, it is further undisputed that at the conclusion of IPC's investigation, Plaintiff was offered various positions at non-Simon locales outside of New York based upon Simon's continued objection to having Plaintiff work at one of its properties.  Although Plaintiff claims that the positions offered were not reasonable because he was unable to re-locate so far away, Plaintiff has failed to identify a single more suitable position which was available at a non-Simon property that Defendants refused to offer him.

Viewing the record as a whole, the Court finds that even if Plaintiff has established an issue of fact as to whether Defendants' reasons were untrue, it is a "weak" one, *see Reeves*, 530 U.S. at 148, and the record is completely devoid of *any* evidence suggesting that age discrimination was the real reason behind Defendants' decision.  Simply put, apart from the

mere fact that Plaintiff was replaced by a younger male, there is not a shred of evidence that Defendants intentionally discriminated on the basis of age. These factors, together with the inference against discrimination that is present in this case, compels the Court to conclude that summary judgment on Plaintiff's age discrimination claims is warranted. Accordingly, Plaintiff's age discrimination claims are dismissed.

### IV. Plaintiff Fails to Raise a Genuine Issue of Material Fact as to his Retaliation Claims

Plaintiff alleges that he was placed on administrative leave and discharged in retaliation for complaining about discrimination. To establish a prima facie case of retaliation under Title VII, an employee must show: "'(1) []he was engaged in an activity protected under Title VII; (2) the employer was aware of plaintiff's participation in the protected activity; (3) the employer took adverse action against plaintiff; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer.'" *Mack v. Otis Elevator Co.*, 326 F.3d 116, 129 (2d Cir. 2003) (quoting *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000)), *cert. denied*, 540 U.S. 1016 (2003).

To prove that his complaints of a hostile work environment were a protected activity, Plaintiff is not required to establish that the conduct complained of actually amounted to a violation of Title VII. Rather, Plaintiff "need only demonstrate that []he had a '*good faith, reasonable belief* that the underlying challenged actions of the employer violated the law.'" *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998) (emphasis in original) (quoting *Manoharan v. Columbia Univ. College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988), *abrogated in part on other grounds*, *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)). Thus, it is possible for an employee reasonably to believe that specified

conduct amounts to harassment, even if that conduct would not actually qualify as harassment under the law.  *Id.*  The Court must assess the reasonableness of the plaintiff's belief in light of the totality of circumstances.  *See Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996).

As noted above, it is inherent in the definition of a sex-based hostile work environment that the conduct occurred because of one's sex.  *See Alfano*, 294 F.3d at 373. Because Plaintiff has introduced no evidence that he was subjected to the alleged hostility because of his gender and in fact testified that Weber's comments were not directed specifically towards men or women, (*see* Pl.'s Dep. at 238-39), he could not have reasonably believed that Weber's alleged conduct violated Title VII.  *See Wimmer v. Suffolk County Police Dep't*, 176 F.3d 125, 136 (2d Cir. 1999) ("In the present case, however, Wimmer could not have reasonably believed that he was opposing an employment practice because the evidence does not address racial discrimination in an employment practice."); Manoharan, 842 F.2d at 594 (holding that plaintiff could not have held a reasonable belief where he "neither pointed out discrimination against particular individuals nor discriminatory practices by [the employer]").

Moreover, Plaintiff's testimony regarding his friendly relationship with Weber and the realities of workplace romances belies his claim that he believed that he was exposed to a sexually hostile work environment.  (*See* Pl.'s Dep. at 263 (stating that Weber's affair with co-worker "didn't bother [him] in a moral sense" because "people have affairs across Long Island every[]day."; *id.* at 262 (stating that he had "a lot of laughs" with Weber and enjoyed being with her); *id.* at 245 (stating that Weber "never used four-letter words" because she was "[t]oo classy for that); Pl.'s Oct. 6, 1999 e-mail to Jennifer Mansfield (stating that "the triumvirate (as

[Weber] has coined it) of [Weber], Rob, [and Plaintiff] have been the heart and soul of the property. This extended to off-hours as on [Weber's] boat and dinner at her home with my wife. We would regularly go out for cocktails, dinner and then wrap up the night shooting pool in some Gin mill.").)

In addition, the fact that Plaintiff first filed a formal grievance regarding Weber's alleged conduct immediately *after* Shapiro made a sexual harassment complaint about Plaintiff only makes Plaintiff's claim that this was a good faith belief more untenable. *See, e.g.*, *Gale v. Primedia, Inc.*, No. 00 Civ. 5700, 2001 WL 1537692, at *4 (S.D.N.Y. Dec. 3, 2001) (finding that no reasonable juror could find that plaintiff had a good faith, reasonable belief that her employer had engaged in conduct creating a hostile work environment where plaintiff's exposure to a relationship between two co-workers had no relation to plaintiff's gender and plaintiff first raised claim after being advised of concerns over her job performance).

Finally, the statements given by Mitchell and Marcello to the effect that there was an "unprofessional environment" at WWM, an "open family atmospher[e]" or that Mitchell observed "the open office and how they all speak to one another" do not compel a different result. "Title VII does not establish a 'general civility code' for the American workplace." *Petrosino v. Bell Atlantic*, 385 F.3d 210, 223 (2d Cir. 2004) (quoting Oncale, 523 U.S. at 81)). Although it may be implied from their statements that the employees at WWM maintained a loose and open work environment, there is absolutely no evidence that Plaintiff was subjected to sex-based hostile work environment within the meaning of Title VII. Under the totality of the circumstances in this case, the Court finds that a reasonable juror could not find that Plaintiff had a good faith, reasonable belief that Defendants had engaged in conduct creating a hostile work

environment.

Even assuming arguendo that Plaintiff had established that his complaints of a hostile work environment were a protected activity, his claim still would fail as Plaintiff has failed to raise a genuine issue of material fact that his administrative leave and eventual termination were pretexts for retaliation. As noted above, despite the fact that Plaintiff believes his conduct was taken out of context, Plaintiff admittedly engaged in behavior toward a Simon employee, which Simon found to be inappropriate. Simon then demanded that Plaintiff be permanently removed from Simon properties and IPC complied *prior* to Plaintiff's complaints. Simply put, there is no evidence that Plaintiff's complaints played any role in the adverse employment decision.

In sum, the Court notes that it may be that the accusations levied against Plaintiff were wrongful; there is no evidence in the record, however, which would create a genuine issue of material fact that Defendants acted in violation of Title VII. Accordingly, Plaintiff's claims of retaliation are dismissed.

## IV.     *Plaintiff's New York State Human Rights Law Claims Are Dismissed*

As mentioned previously, Plaintiff also claims that Defendants violated the NYSHRL. This claim too, must fail.

Discrimination and retaliation "claims under the NYSHRL are analyzed identically to claims under . . . Title VII," and "the outcome of an employment discrimination claim made pursuant to the NYSHRL is the same as it is under . . . Title VII." *Smith v. Xerox Corp.*, 196 F.3d 358, 363 n.1 (2d Cir. 1999). Thus, NYSHRL claims are generally considered "in tandem" with Title VII claims, *see Leopold v. Baccarat, Inc.*, 174 F.3d 261, 264 n.1 (2d Cir.

1999), and a district court need not explicitly evaluate a plaintiff's NYSHRL claims where it has thoroughly analyzed the plaintiff's Title VII claims. *Smith*, 196 F.3d at 363 n.1. In the present case, as Plaintiff has failed to state either a discrimination or retaliation claim under Title VII, he has ipso facto failed to state these claims under the NYSHRL as well.

In addition, Plaintiff asserts NYSHRL claims against the individual defendants. Under the NYSHRL standard for aiding and abetting liability, "[t]here is . . . a requirement that liability must first be established as to the employer/principal before accessorial liability can be found as to an alleged aider and abettor." *See DeWitt v. Lieberman*, 48 F. Supp. 2d 280, 293 (S.D.N.Y. 1999) (supervisor who committed the sexual harassment not held liable under § 296(6) because plaintiff could not state a claim of sexual harassment against employer); *Sowemimo v. D.A.O.R Sec., Inc.*, 43 F. Supp. 2d 477, 490-91 (S.D.N.Y. 1999) (plaintiff failed to establish liability against individual defendant's employer thereby eliminating her claims against the individual defendant as an aider and abettor under the NYSHRL). Because Plaintiff has failed to establish IPC's liability, Plaintiff's claims against the individual defendants are dismissed.

## CONCLUSION

For all of the above reasons, Defendants' motion for summary judgment is GRANTED as to all of Plaintiff's claims, and this case is accordingly DISMISSED in its entirety. The Clerk of Court is directed to CLOSE this case.

**SO ORDERED.**

Dated: November 18, 2005
     Central Islip, New York         /s_____
                                          Denis R. Hurley,
                                          United States District Judge